ERASTUS TEFFT v. LEWIS P. FIERY.

1. DISCRETION OF COURT, *Not Abused.* This was an action on a promissory note. F., the plaintiff, filed his petition in the district court, on December 11, 1876, against T. as maker, and A. as indorser of the note. Summons was duly issued, and served on both defendants on the same day. Both were required to answer on or before January 2, 1877. A. answered on January 5, 1877, and T. did not answer at any time. On March 16, 1877, T. filed his petition for adjudication as a bankrupt in the district court of the United States, and on October 31, 1877, he was duly discharged as a bankrupt by said court, and his certificate of discharge was duly issued to him. On February 4, 1879, this case was regularly called for trial, and a trial was had between F. and A., which trial resulted in a finding and judgment in favor of A. F. then produced said note, and asked for a judgment thereon against T. T. then asked leave of the court to file an answer in the case forthwith, and not to delay the trial, and setting forth the said discharge in bankruptcy, giving a copy thereof. But the court refused to permit the answer to be filed, and T. duly excepted. T. then asked leave to file said discharge, and to introduce the same in evidence, but the court refused, and T. again excepted. The court then rendered a judgment on the note against T., who again excepted. T. then moved for a new trial, and again presented said discharge; but the court overruled the motion, and T. again excepted. T. again presented to the court his certificate of discharge, and asked that the court enter his discharge from all liability on the said judgment, and also that the court order that there be indorsed on said judgment the following words, to wit: "Discharged by virtue of the bankrupt law;" but the court refused, and T. again excepted. What was done in the case from January 5, 1877, up to March 4, 1879, is not shown. Whether the court was at any time during that time in session or not, whether the case was at any time called or not, whether it was at any time continued or not, and if continued, by whom, and upon what

48—22 KAS.

grounds, or whether any proceedings were had in the case under § 1 of the Laws of Kansas, relating to bankrupts, (Comp. Laws of Kansas of 1879, p. 116,) or under any other law, does not appear. Nor does it appear what caused the great delay on either side. *Held,* That in the opinion of the judges of the supreme court, the court below should have allowed said answer to be filed, but that the matter was wholly within its discretion, (Comp. Laws of 1879, civil code, § 106, p. 616,) and that the supreme court cannot say, under the circumstances of this case, that the court below abused its discretion, and therefore cannot reverse the judgment of the district court because of its refusal to permit said answer to be filed.

2. STATUTE, *Construed.* And further, *held,* that § 3 of the said Laws of Kansas, relating to bankrupts, does not apply to the judgment rendered in this case against T., but does apply to such judgments only as may be discharged or released by virtue of the national bankrupt law. (U. S. Rev. Stat., pp. 992, 993, §§ 5114 to 5119.)

*Error from Shawnee District Court.*

ACTION on a promissory note, brought by *Firey,* against *Tefft* as maker, and *E. W. Auld* as indorser thereof. Trial at the January Term, 1879, of the district court, and judgment for plaintiff and against defendant *Tefft,* who brings the case to this court.

*Willard Davis,* and *A. B. Jetmore,* and *Case & Moss,* for plaintiff in error.

*N. C. McFarland,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action on a promissory note. Firey, the plaintiff, filed his petition in the court below on December 11, 1876, against Tefft as maker and Auld as indorser of the note. Summons was duly issued, and served on both defendants on the same day. Both defendants were required to answer on or before January 2, 1877. Auld answered on January 5, 1877, and Tefft did not answer at any time. On March 16, 1877, Tefft filed his petition for adjudication as a bankrupt, in the district court of the United States, and was afterward duly adjudged to be a bankrupt. On October 31, 1877, he was duly discharged by said court

from all debts and claims provable against his estate, as a bankrupt, and his certificate of discharge was duly issued to him. On February 4, 1879, this case was regularly called for trial in the court below. Trial was had between Firey and Auld, which trial resulted in a finding and judgment for Auld. Firey then produced said note, and asked for a judgment thereon against Tefft, who then asked leave of the court to file an answer in the case forthwith, and not to delay the trial, setting forth in his answer the said discharge in bankruptcy, giving a copy thereof. But the court refused to permit the answer to be filed, and Tefft duly excepted. Tefft then asked leave to file said discharge, and to introduce the same in evidence; but the court refused, and Tefft again excepted. The court then rendered judgment on the note against Tefft, who again excepted. Tefft then moved for a new trial (a strange proceeding where judgment is rendered on a default), and again presented said discharge; but the court overruled the motion, and Tefft again excepted. Tefft again presented to the court his certificate of discharge, and asked that the court enter his discharge from all liability on the said judgment rendered against him, and also asked that the court order that there be indorsed on said judgment the following words, to wit: "Discharged by virtue of the bankrupt law;" but the court refused, and Tefft again excepted. He now brings the case to this court for review.

There can be no question upon the facts of the case as now presented, that Tefft was on October 31, 1877, by virtue of said bankruptcy proceedings, duly discharged from all liability on said promissory note, and consequently that, with proper diligence on his part in showing such discharge, no judgment should, or properly could, have been rendered against him on said note. But whether Tefft used proper diligence or not, was the material question in the case in the court below. That is, did he take the proper means in the court below to show that he was discharged from all liability on said note? That question, however, is not the only question presented in this court. If this court shall decide that the court below

might, or even should, have permitted said answer to be filed, then the more difficult question arises: Did the court below abuse its discretion in refusing to permit said answer to be filed? (Code, § 106.) The statutes of Kansas with reference to discharges from debts and judgments on account of bankruptcy proceedings read as follows:

"SECTION 1. That in any action pending before any of the courts of this state, on any contract provable under the act of congress hereinafter mentioned, when it is made to appear by the affidavit of any party to any such action, and the certificate of the register in bankruptcy, or the clerk of a district court of the United States, that such party has presented his petition to the proper court for a discharge under the act of congress, approved March 2, 1867, entitled 'An act to establish a uniform system of bankruptcy throughout the United States,' it shall be the duty of such court to continue all further proceedings against such person or persons, until the question of the debtor's discharge shall have been determined.

"SEC. 2. That in any action in which any judgment has been or may hereafter be rendered against any person or persons in any of the courts of this state, and such person or persons shall have applied to the proper court for his or their discharge under the act of congress, approved March 2, 1867, entitled 'An act to establish a uniform system of bankruptcy throughout the United States,' and shall file his or their affidavit or affidavits of such fact, with the certificate of any register in bankruptcy, or the clerk of the district court of the United States, it shall be the duty of the court to make an order in such case that no execution, order of arrest, or other process shall issue on the same, and no sale of lands or personal property shall be confirmed, but the same shall be set aside and held for naught.

"SEC. 3. That in any case in which any person or persons has been or may hereafter be discharged from his debts under and by virtue of the act of congress approved March 2, 1867, entitled 'An act to establish a uniform system of bankruptcy throughout the United States,' and shall produce a certificate of discharge, as provided for by said act, to the court in which any judgment is of record, it shall be the duty of any such court to enter a discharge of any such person from any and all liability thereon, and the court shall order to be indorsed on the record of said judgment, the following words: 'Dis-

charged by virtue of the bankrupt law.' And thereafter any such judgment shall be deemed fully discharged and satisfied." (Comp. Laws of Kansas, 1879, p. 116.)

What was done in this case from January 5, 1877, (the time when Auld filed her answer,) up to March 4, 1879, (the time when said trial was had, and said judgment rendered,) is not shown. Whether the court was at any time during that time in session or not, whether the case was at any time called or not, whether it was at any time continued or not, and if continued, by whom, and upon what grounds, or whether any proceedings were had in the case under § 1 of said statutes of Kansas, or under any other law, does not appear. All that we can now know concerning the case, we have already stated.

Up to January 2, 1877, the last day within which Tefft had a right to answer, he had no defense to the action, and therefore very properly refrained from answering. His default was therefore meritorious, instead of being censurable or negligent; and he should certainly lose nothing by such default. From January 2, 1877, up to March 16, 1877, (the time when Tefft filed his petition in bankruptcy,) the plaintiff, Firey, had a right to take judgment against Tefft on said default, without trial and without evidence; and the entering of the judgment would have been a merely formal matter — as purely formal as the entering of a judgment upon the verdict of a jury, or upon an agreed statement of facts, after the submission of the case thereon to the court; and if any such judgment had been rendered, Tefft could have come into court at any time after his discharge in bankruptcy, and have had such judgment discharged, as provided by § 3 of said statutes of Kansas. But no such judgment was rendered at that time. On March 16, 1877, Tefft filed his petition in bankruptcy, and still no judgment was rendered. Why all proceedings were still delayed is not shown. Possibly they were stayed under § 1 of said statutes; but whether they were so stayed or not, is not shown by the record, and it is wholly immaterial. On October 31, 1877, Tefft received his final

discharge in bankruptcy, and still the proceedings were delayed; but why, is not shown. Up to October 31, 1877, Tefft's default was not only excusable, but was justifiable; for up to that time he had no defense to the plaintiff's action. But after that time, both parties still delayed to take any action in the case. Firey neglected to take or ask to take a judgment, and Tefft neglected to file or ask to file an answer. Thus the condition of the case remained until February 4, 1879, when Firey asked for a judgment, and Tefft asked leave to file his answer.

This is all there is of the case. Tefft neglected to file or to ask to file his answer from December 11, 1877, up to February 4, 1879. But a portion of this neglect was justifiable and meritorious. Firey neglected to take judgment from January 2, 1877, up to February 4, 1879, but as to a portion, at least, of that time, his neglect was probably beneficial to him; for, as we have already seen, if his judgment had been rendered at any time prior to the commencement of the proceedings in bankruptcy, the judgment would certainly have been discharged by the final discharge in bankruptcy. With this view of the case, (the view that a judgment rendered at that time would have been discharged, but that a cause of action, or a suit pending on such cause of action, would not have been so discharged,) a judgment rendered at that time would not have been as valuable to Firey as the suit pending on said promissory note. But as the judgment was due long before any bankruptcy proceedings were commenced, and as the rendering of the judgment would have been merely a formal matter, without a trial and without evidence, it may be asked: Should we not consider the case very much in the same way that we would if said judgment had been rendered at the time it was due? And should we not consider the judgment, actually rendered on February 4, 1879, as relating back to January 2, 1877, the time when it was first due, and as being of about the same value as it would have been if it had been rendered when it was first due? That is, although a judgment cannot relate back so as to become a lien on real

estate from the time it might have been rendered, yet, should it not relate back so as to be of no more value to the plaintiff, who could take judgment whenever he chose, than it would be if it had been rendered when it was first due? This is the most favorable view of the question that can be taken on the side of Tefft. And taking this view, or considering the question in this light, it would seem that the court below should have permitted said answer to be filed. Indeed, from the facts as they are presented to this court, each of the judges of this court believes that the court below in its discretion should have permitted said answer to be filed. Said § 3 of the Kansas statutes by its terms applies to "any judgment." It applies in terms to the judgment rendered against Tefft in this case, and would apply in terms to any judgment that could have been rendered against Tefft therein. It applies in terms to any judgment which might be rendered pending proceedings in bankruptcy, or that might be rendered after the bankrupt's final discharge, even on a cause of action accruing after such discharge, as well as to judgments rendered prior to the commencement of proceedings in bankruptcy. Hence, to say that the statute does not apply to the present case, is to limit its terms, or, perhaps, properly speaking, to limit its operation in some cases, where by its general terms it would have full scope. We think the statute must be limited in its operation in some cases where it would seem by its terms, or at least by a portion of its terms, that it should have operation. Thus, although the statute would seem by its terms to apply to a judgment rendered after the bankrupt's discharge, and on a cause of action accruing after such discharge, yet we cannot think that such was the intention of the legislature, or that such can be the effect of the statute. The true intent and spirit of the statute are, notwithstanding its terms, merely to discharge and relieve the bankrupt from such of his debts only as the national bankrupt law would discharge and relieve him from. This is the only reasonable view of the statute; and the requirement of the statute, that the words, "discharged by virtue of

the bankrupt law," shall be indorsed on the judgment, shows that this is the correct view. We would therefore think that said § 3 of our Kansas statute would not apply to the

1. Statute construed.

judgment rendered against Tefft in the present case. (See National Bankrupt Law, U. S. Rev. Statutes, pp. 992, 993, §§ 5115 to 5119.) For, as before stated, said judgment was not rendered until long after Tefft received his full discharge in bankruptcy. We know that the operation of the terms of a statute should never be limited within narrower bounds than the terms of the statute would themselves prescribe, unless the case coming within such terms clearly does not come within the spirit of the statute, or within the intention of the legislature. The spirit of the statute and the intention of the legislature must govern in all cases when they can be ascertained. And here, from the object of the statute, the thing to be attained, the purpose to be subserved, and the language of the statute preceding and following the words, "any judgment," we know what the intention of the legislature was and what the spirit of the statute is. But from the fact that the legislature used such broad and general language in said statute, saying "any judgment," when it in fact merely meant any judgment discharged or released by virtue of the national bankrupt law, we would think that the legislature intended that the courts of the state should not throw any unneceseary obstacles in the way of a bankrupt's being discharged from debts, from which, by virtue of the national bankrupt law and proceedings thereunder, he had been properly discharged. Hence, for this reason, among others, we would think that the court below should have permitted said answer to be filed. But,

2. Discretion of court, not abused.

can this court say that the district court abused its discretion in refusing to permit said answer to be filed? We can nearly say so, but not quite. The code of civil procedure provides, among other things, as follows:

"SEC. 106. The court, or any judge thereof in vacation, may, in his discretion, and upon such terms as may be just,

allow an answer or reply to be made, or other act to be done, after the time limited by this act, or by an order enlarge such time." (Comp. Laws of 1879, p. 616.)

"SEC. 144. Either party may be allowed, on notice, and on such terms as to costs as the court may prescribe, to file a supplemental petition, answer or reply, alleging facts material to the case, occurring after the former petition, answer or reply." (Comp. Laws of 1879, p. 619.)

As will be seen from § 106 of the code, the whole matter rests within the *discretion* of the trial court. Was that discretion abused? On October 31, 1877, Tefft was discharged as a bankrupt, and his defense to this action then became complete. He might have appeared on that day before the district court, or the judge thereof, and have asked to file an answer in the case, setting up his said defense of a discharge in bankruptcy. He was then in default. And then was a very proper time to ask to be relieved from such default. But he did not appear. He did not appear at that time, nor at any other time prior to February 4, 1879. Why did he not appear sooner? Why did he delay the matter so long? And when he did appear, why did he not account for or make some excuse for this great delay? For over fifteen months he slept upon his rights, without the slightest excuse therefor, so far as the record of the case shows. This was inexcusable negligence; and although the plaintiff was equally negligent in his great delay in taking judgment, still we cannot say that the court below abused its discretion in finally, and on February 4, 1879, refusing to permit the defendant Tefft to file an answer, and in then rendering judgment in favor of the plaintiff and against the defendant Tefft, for the amount of said note. Entertaining these views, the judgment of the court below must be affirmed.

All the Justices concurring.